```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION


Gerald Joseph Porter,            §
                                 §
      Plaintiff,                 §
                                 §
v.                               §   CIVIL ACTION NO. H-12-2124
                                 §
The Appraisal Group, Inc.,       §
et al.,                          §
                                 §
      Defendants,                §
```

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Plaintiff's Motion for Entry of Default against Defendant MetLife Bank, N.A. ("MetLife") (Doc. 6), Defendant MetLife's Motion to Dismiss Plaintiff's Second[2] Amended Petition (Doc. 11), and Plaintiff's Motion to Remand (Doc. 15). The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's Motion to Remand be **GRANTED**.  As the court does not have jurisdiction over this action, the court does not address the other two pending motions.

## I.  Case Background

Plaintiff filed this action in state court on February 7, 2012, asserting gross negligence and fraudulent misrepresentation

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 14.

[2] Although Plaintiff identified the live pleading as his *second* amended petition, it is, in fact, the first and only amendment in the case record.

against Defendants The Appraisal Group, Inc., ("TAG") and Ervin L. Lehman ("Lehman").[3]  On June 19, 2012, Plaintiff amended his petition, adding MetLife Bank[4] as a defendant.[5]

Plaintiff's claims emanate from an appraisal of real property performed in connection with Plaintiff's application for a reverse mortgage loan.[6]  According to the live pleading, Plaintiff contacted a mortgage broker to assist in the loan process, and the mortgage broker followed the procedure of the Department of Housing and Urban Development ("HUD") to select an appraiser.[7]  The appraiser visited the property but declared bankruptcy before issuing the appraisal.[8]  Defendant MetLife directly hired a second appraiser, Defendant TAG.[9]  Defendant Lehman inspected the property for Defendant TAG and prepared the appraisal report, which valued

---

[3] See Doc. 1-3, Ex. 2 to Notice of Removal, Pl.'s 1st Original Pet., pp. 1, 4 (unnumbered).

[4] Plaintiff's amended petition listed "Metlife Bank" as a defendant in the preliminary paragraph but listed "Metlife Bank–Reverse Mortgage Servicing Dept." under the heading "Parties and Service." See Doc. 1-15, Ex. 12 to Notice of Removal, Pl.'s 2d Am. Pet., p. 1 (unnumbered).  Def. MetLife claims that the proper defendant is "MetLife Home Loans, a division of MetLife Bank, N.A." See Doc. 16, Def. MetLife's Resp. to Pl.'s Mot. to Remand, p. 1.  Resolution of this dispute is not pertinent to the decision concerning remand.

[5] See Doc. 1-15, Ex. 12 to Notice of Removal, Pl.'s 2d Am. Pet., p. 1 (unnumbered).

[6] See id. at p. 2 (unnumbered).

[7] See id.

[8] See id.

[9] See id.

the property at $430,000.[10]

Plaintiff disagreed with the appraisal value and requested a copy to review.[11]  In Plaintiff's estimation, the report was "seriously flawed," and Plaintiff filed a rebuttal.[12]

> In the rebuttal[, Plaintiff] listed amenities that had been ignored, upgrades that had been disregarded, inaccurate neighborhood boundaries and description, comparables that were not similar in construction or size, sales that were pending and had not been closed, inaccurate adjustments, and above all, an inaccurate total square foot calculation for the subject property.[13]

Although corrections were made to the appraisal, the value was not changed.[14]  Plaintiff filed a second rebuttal, pointing out inaccuracies with regard to amenities, upgrades, and square footage and suggesting comparable sales that Plaintiff believed to be more appropriate than those cited in the report.[15]

Plaintiff also took issue with the estimate for repairs that was included in the appraisal, arguing that it was more than $25,000 higher than estimates he had received from contractors.[16] Because of the difference in estimates, Defendant MetLife required

---

[10]  See id. at pp. 2, 3 (unnumbered).

[11]  See id. at p. 3 (unnumbered).

[12]  See id.

[13]  Id.

[14]  See id.

[15]  See id.

[16]  See id. at pp. 3-4 (unnumbered).

a reinspection after the repairs were completed.[17]  Other disputes arose between Plaintiff and the appraiser after reinspection, but Defendant MetLife approved the appraisal.[18]  Despite his dissatisfaction with the appraisal, Plaintiff proceeded with the loan based, at least in part, on the threat of foreclosure by his primary mortgage lien holder.[19]

Plaintiff alleged gross negligence and fraudulent misrepresentation:

> This cause of action is brought under the Restatement of Torts 2nd and 3rd for Fraud and negligence. The defendant(s) failed to follow HUD and FHA guidelines for conducting property appraisals for reverse mortgages. His (Their) failure constitutes gross negligence in the gathering of the necessary information, validation and examination of that information, and determining the market value for the subject property which resulted in an extremely low valuation.
> The defendant(s) deliberate failure to include important amenities and upgrades along with his (their) use of comparables that are not similar in size and construction and refusal to measure the outer perimeter of the subject property to determine the appropriate square footage, as required by the guidelines, knowing that accurate information would make it difficult for him to support the low evaluation, the inclusion of information which was known to be untrue, constitutes FRAUD [sic].[20]

Plaintiff sought as damages the difference between the appraised value of $430,000 and the "true value" of $645,000, costs in the

---

[17]   See id. at p. 4 (unnumbered).

[18]   See id.

[19]   Id.

[20]   Id. at pp. 4-5 (unnumbered).

4

amount of $20,000 related to the delay in refinancing his primary mortgage loan, and punitive damages in the amount of $1,000,000.[21]

Defendant MetLife, with the consent of the other two defendants, removed the action to this court on July 13, 2012.[22] Plaintiff filed an motion for entry of default against Defendant MetLife on July 23, 2012.[23] Defendant MetLife responded with a motion to dismiss on July 27, 2012.[24] On August 7, 2012, Plaintiff filed a motion to remand, which Defendant MetLife opposed.[25]

The court addresses the last motion first because it challenges this court's subject matter jurisdiction.

## II.  Discussion

The party removing an action bears the burden of establishing federal jurisdiction. Frank v. Bear Stearns & Co., 128 F.3d 919, 921-22 (5th Cir. 1997). Removal jurisdiction exists only if federal district courts would have original jurisdiction. 28 U.S.C. § 1441(a); Frank, 128 F.3d at 922.  In this case, Defendant MetLife has invoked federal-question jurisdiction.[26]

---

[21]   Id. at p. 5 (unnumbered).

[22]   See Doc. 1, Notice of Removal.

[23]   See Doc. 6, Pl.'s Mot. for Entry of Default.

[24]   See Doc. 11, Def. MetLife's Mot. to Dismiss.

[25]   See Doc. 15, Pl.'s Mot. to Remand; Doc. 16, Def. MetLife's Resp. to Mot. to Remand.

[26]   The court notes that Plaintiff's live pleading implies that both Defendants TAG and Lehman are Texas citizens, thus precluding diversity jurisdiction. Cf. 28 U.S.C. § 1332 (stating that the matter in controversy must be between citizens of different states); Exxon Mobil Corp. v. Allapattah Servs.,

5

A federal court has federal-question jurisdiction over a lawsuit only if "a federal question appears on the face of the plaintiff's well-pleaded complaint." Elam v. Kan. City S. Ry. Co., 635 F.3d 796, 803 (5th Cir. 2011). Although a federal court may exercise jurisdiction under certain circumstances even if the plaintiff did not characterize the causes of action as federal claims, the complaint must establish that "federal law creates the cause[s] of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Borden v. Allstate Ins. Co., 589 F.3d 168, 172 (5th Cir. 2009)(citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)); see also Frank, 128 F.3d at 922.

Federal jurisdiction does not arise from the "mere presence of a federal issue in a state cause of action." Singh v. Duane Morris LLP, 538 F.3d 334, 338 (5th Cir. 2008)(quoting Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 813 (1986)). In 2008, the Fifth Circuit set out four factors that must be present to find federal-question jurisdiction in such cases: 1) the resolution of the federal issue must be necessary to the resolution of the state-law claim; 2) the federal issue must be actually in dispute; 3) the federal issue must be substantial; and 4) exercising federal jurisdiction must not "disturb the balance of federal and state

---

Inc., 545 U.S. 546, 553 (2005)(reiterating the requirement of complete diversity).

judicial responsibilities." Id. (construing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)).

Here, Plaintiff does not contend that federal law creates the causes of action alleged, and Defendant MetLife points to no federal law that gives rise to Plaintiff's claims. Rather, Defendant MetLife argues that the "plain language" of Plaintiff's amended pleading raises a "substantial question of federal law" by alleging that Defendants failed to follow federal guidelines in the appraisal process.[27] Defendant MetLife contends that the underlying federal legal issue that must be resolved before addressing Plaintiff's state-law claims is the proper interpretation of HUD and Fair Housing Authority ("FHA") regulations "governing a lender's ability to contract with and appoint appraisers in the context of a reverse mortgage."[28]

The court disagrees with Defendant MetLife's characterization of Plaintiff's claims. As Plaintiff states in his motion, his claims focus on the performance of the appraisal, which Plaintiff contends was negligent on a number of levels, including the failure to follow HUD and FHA guidelines.[29] As the court reads the petition, Plaintiff is alleging that Defendant MetLife was negligent in failing to validate or examine the appraiser's

---

[27] See Doc. 16, Def. MetLife's Resp. to Pl.'s Mot. to Remand, pp. 1, 3.

[28] Id. at p. 3.

[29] See Doc. 1-15, Ex. 12 to Notice of Removal, Pl.'s 2$^d$ Am. Pet., p. 4 (unnumbered).

7

information.[30]  The fraud claim is also based on the appraisal and, presumably in the alternative, asserts that Defendants deliberately excluded amenities and upgrades and intentionally refused to properly measure the square footage in order to justify a lower valuation.[31]

The court is not moved by Defendant MetLife's comparisons of this case to <u>Borden</u>, 589 F.3d at 168, and <u>West v. Harris</u>, 573 F.2d 873 (5th Cir. 1978).  <u>Borden</u> and <u>West</u> involved disputes between individuals and insurers that issued flood insurance policies pursuant to the federal flood insurance program.  See <u>Borden</u>, 589 F.3d at 170; <u>West</u>, 573 F.2d at 875.  In both cases, the Fifth Circuit found that federal law applied to the disputes because the policies were issued pursuant to a federal program that is national in scope and supported by the federal fisc.  See <u>Borden</u>, 589 F.3d at 172; <u>West</u>, 573 F.2d at 881.

The case presently before this court is more akin to <u>Merrell Dow Pharmaceuticals Inc.</u>, 478 U.S. at 804 and <u>Singh</u>, 538 F.3d at 334.  In <u>Merrell Dow Pharmaceuticals Inc.</u>, the United States Supreme Court found that the plaintiffs' negligence cause of action, which was based in part on the allegation that a drug manufacturer violated the Federal Food, Drug, and Cosmetic Act, did not present a federal question.  <u>Merrell Dow Pharms. Inc.</u>, 478 U.S.

---

30   <u>See id.</u>

31   <u>See id.</u> at pp. 4-5 (unnumbered).

at 805-06, 817. The Court concluded that, where Congress has not created a private, federal cause of action for the violation, a pleading in which the violation is asserted to satisfy an element of the state cause of action does not raise a federal question. Id. at 817; see also Grable & Sons Metal Prods., Inc., 545 U.S. at 319 (rephrasing the Merrell Down Pharmaceuticals Inc. holding as "no welcome mat meant keep out").[32]

The Fifth Circuit determined, in Singh, that a state-law attorney malpractice claim also did not raise a federal question, even though the alleged malpractice occurred in a federal trademark action. Singh, 538 F.3d at 337, 340. The court found that federal law was "only tangentially relevant to an element of a state tort claim" and that the case involved "no important issue of federal law." Id. at 339. Noting also that malpractice is traditionally a matter of state law, the court found that the exercise of federal jurisdiction would usurp state authority. Id. at 339, 340.

Examining this case in light of the four factors articulated by the Fifth Circuit in Singh, the court finds that federal-question jurisdiction has not been established. The federal issue in this case–violation of "HUD and FHA guidelines for conducting

---

[32] In Grable & Sons Metal Prods., Inc., the Supreme Court found that federal-question jurisdiction was proper in a quiet title action because the application of the federal statute was an essential element. See Grable & Sons Metal Prods., Inc., 545 U.S. at 314-15.

9

property appraisals for reverse mortgages"[33]–is relevant only as a standard by which to determine whether Defendants were negligent. Plaintiff contends that the federal guidelines are not even in dispute.

The guidelines are tangential at best to the decision whether Defendants were negligent in the performance of the appraisal or misrepresented the valuation of Plaintiff's property. In fact, neither party cites the court to the relevant guidelines, and it is not entirely clear what they address precisely. Defendant MetLife refers to "federal regulations governing a lender's ability to contract with and appoint appraisers in the context of a reverse mortgage,"[34] and Plaintiff's amended pleading hints that it was improper for Defendant MetLife to hire Defendant TAG directly. However, the hiring of the appraiser does not appear to be an element of Plaintiff's gross negligence or fraudulent misrepresentation claim. As the court understands Plaintiff's allegations, the real point of contention is what was considered in valuing the property.

Plaintiff's causes of action are traditionally and predominately issues of state law. Therefore, federal court intervention would usurp state authority and raise federalism concerns. This case does not give rise to federal jurisdiction.

---

[33] Doc. 1-15, Ex. 12 to Notice of Removal, Pl.'s 2$^d$ Am. Pet., p. 4 (unnumbered).

[34] Doc. 16, Def. MetLife's Resp. to Mot. to Remand, p. 3.

### III.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion to Remand be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 1st day of November, 2012.

Nancy K. Johnson
United States Magistrate Judge